UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBBIE P.,[1] <br><br> Petitioner, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] <br><br> Respondent. | Case No. 1:20-CV-00469-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court for consideration is Debbie P.'s Petition for Review of the Respondent's denial of social security benefits, filed on October 6, 2020. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner for further proceedings.

## BACKGROUND

On June 5, 2018, Petitioner protectively filed a Title II application for a period of

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

disability and disability insurance benefits. Petitioner filed a Title XVI application for supplemental security income on July 11, 2018. Both applications allege disability beginning on April 21, 2018. The applications were denied initially and on reconsideration.

A hearing was conducted on March 4, 2020, before Administrative Law Judge (ALJ) Stephen Marchioro. After considering testimony from Petitioner and a vocational expert, the ALJ issued a decision on April 17, 2020, finding Petitioner has not been under a disability since the alleged onset date through the date of the written decision. (AR 13-27.) The Appeals Council denied Petitioner's request for review on August 26, 2020, making the ALJ's decision final. Petitioner timely filed this action seeking judicial review of the ALJ's final decision. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's written decision, Petitioner was forty-eight years of age. Petitioner completed high school and has previous work experience as a cashier, in sales, and stocking shelves. (AR 227, 256.) Petitioner claims she is unable to work due to physical impairments, including: osteoarthritis, rheumatoid arthritis, and psoriatic arthritis. (AR 71-72.)

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

MEMORANDUM DECISION AND ORDER - 2

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since April 21, 2018, the alleged onset date. (AR 15.) At step two, the ALJ found Petitioner had the following medically determinable, severe impairments: rheumatoid arthritis (RA), psoriasis, degenerative disc disease, and sicca syndrome. (AR 15.) At step three, the ALJ found Petitioner did not have an impairment or combination of impairments that meet or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 17.)

The ALJ next found Petitioner retained the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: she "can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, and handle or finger (bilaterally)[, and] can have occasional exposure to vibration or extreme cold." (AR 19.) Relying upon testimony from the vocational expert, the ALJ concluded at step four that Petitioner would be unable to perform her past relevant work. (AR 25.) At step five, the ALJ found jobs exist in significant numbers in the national economy that

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner can perform given her age, education, work experience, and RFC. Thus, the

ALJ determined Petitioner is not disabled.

## ISSUES FOR REVIEW

1.   Whether the ALJ properly evaluated Petitioner's subjective symptom testimony?

2.   Whether the ALJ properly evaluated the lay witness testimony?

3.   Whether the ALJ's RFC assessment is supported by substantial evidence?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal

error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v.

Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a

whole, weighing both the evidence that supports and the evidence that does not support

the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court

reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*,

236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and

actual findings identified by the ALJ and may not affirm for a different reason or based

on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

### 1.    Subjective Symptom Testimony

Petitioner challenges the ALJ's evaluation of her subjective symptom testimony, arguing the ALJ erred by dismissing her statements without providing clear and convincing reasons for doing so. (Dkt. 20 at 6.) Respondent contends the ALJ reasonably evaluated Petitioner's symptom testimony. (Dkt. 21 at 4.)

### A.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant

**MEMORANDUM DECISION AND ORDER - 5**

has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons[3] for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to

---

[3] Respondent argues the clear and convincing standard is inconsistent with the substantial evidence standard of review prescribed by Congress and the agency regulations. (Dkt. 21 at 5, n. 1.) This argument has been repeatedly raised before the Court and rejected. Recently, the United States Court of Appeals for the Ninth Circuit explained that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Requiring the ALJ to provide clear and convincing reasons allows the Court to meaningfully review the ALJ's decision. *Id*. In turn, the ALJ's reasons for rejecting a claimant's symptom testimony must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). There is no inconsistency between the standards.

permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[4] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source

---

[4] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n. 5.

**MEMORANDUM DECISION AND ORDER - 7**

statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### B.    Petitioner's Symptom Statements and Testimony

Petitioner completed an adult function report on August 2, 2018. (AR 247-254.) In the report, Petitioner states the pain from her arthritis limits her ability to lift and to move around, stating "arthritis makes doing anything hurt." (AR 252.) Petitioner reports that, if her arthritis is acting up, she will stand or sit depending on what hurts less and that her pain affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use her hands. (AR 248, 252.) She has trouble sleeping due to pain, and states that she no longer fishes as often because she is unable to tie a fly. (AR 251.) Petitioner is able to do laundry, tend to her pets, and prepare simple meals daily. Twice a week, Petitioner goes outside and goes shopping for approximately two hours, but she takes her son when shopping to help lift items and push the cart for her.

At the hearing conducted on March 4, 2020, Petitioner testified her "biggest issue" is her arthritis. Petitioner stated that, while she was still working, she received medications for her arthritis that provided some relief from flare-ups, but that she was still unable to continue working even with the medication treatments, because her arthritis would flare up and she would drop things. (AR 50) (testifying the medications helped "about half"). However, Petitioner testified that she had to stop treatments when she lost her insurance in February 2019, due to her inability to pay. One month prior to the hearing, in February 2020, Petitioner obtained Medicaid coverage and had reinitiated

her arthritis treatment. (AR 47) (Petitioner testified she visited Idaho Arthritis Center once prior to the hearing.)[5]

Petitioner testified that, during the approximately one year she was without insurance, her arthritis symptoms worsened without treatment and that she used over-the-counter pain relievers to treat her symptoms. (AR 47-48.) During the hearing, she also testified that she was "struggling" and unable to "do buttons, zippers, snaps," hold a knife, and turn doorknobs, jars, or grip a steering wheel with her right-dominant hand. (AR 51-52.) Petitioner stated: "it has gotten to the point my right hand, like I said, it's hard to pick up things, even light things. I can't even pick up a coffee cup…." (AR 46.) Petitioner explained that her right hand will sometimes "swell up really bad…to where my fingers will lock up and…it's so swollen I can't even move it." (AR 58.)

### C.    Analysis of ALJ's Decision

In his written decision, the ALJ considered Petitioner's subjective symptom testimony concerning her physical impairments, concluding that, although Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record. (AR 20.) After discussing the medical records, the ALJ stated:

---

[5] Petitioner's counsel provided additional medical records to the ALJ following the hearing that included more recent records of her arthritis treatments, dated both before Petitioner lost her insurance and after she obtained Medicaid coverage and resumed treatments. (AR 762-803.)

**MEMORANDUM DECISION AND ORDER - 9**

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the treatment records that do not document a need to lie down daily due to migraine headaches, significant pain in her feet, her hip popping out of place, or the persistent need for a cane to ambulate or stand. Although reduced strength (4/5) and hypoesthesia in the extremities is repeatedly noted on exams, so is normal fluid, stable gait, and the claimant's reports of significant improvement in standing, walking and sitting with lumber MBBs[6] and SI joint injections. The claimant testified that she left her most recent job due to RA symptoms such as dropping things, and this testimony finds some support in the documentation of her difficulties in early to mid 2018 but, by September 2018, she reported significant relief from Remicade, consistent with improved exam findings, and additional medications were prescribed to alleviate the drop-off effect. Subsequently, she ambulated with a normal gait and her exams showed no more than mild to moderate symptoms.

(AR 22.)

Thus, the ALJ gave two clear reasons for rejecting Petitioner's symptom testimony: 1) inconsistency with the treatment records; and 2) improvement with medication treatment.[7] The Court will discuss each in turn.

---

[6] Lumbar "MBBs" refers to lumbar medical branch block.

[7] Petitioner's opening brief contends the ALJ improperly discounted her symptom severity based on her failure to seek and obtain treatment after losing her insurance, her unprescribed use of a cane, and her failure to discontinue smoking against the advice of her medical providers. (Dkt. 20 at 8-9.) The failure to obtain or seek treatment and to discontinue smoking are factors considered by the ALJ in assessing the RFC limitations. (AR 24) (In assessing the RFC, the ALJ stated that he considered "the lack of evidence of repeated ER visits, application for low/no cost care services, and continuation of smoking against medical advice."). As to the use of a cane, the ALJ did not rely on Petitioner's use of a cane as an independent basis for discounting her symptom testimony. Rather, the ALJ noted the persistent need for a cane to ambulate or stand as an example of an inconsistency between Petitioner's symptom testimony and the treatment records. (AR 22.) The Court finds no error in this regard. Substantial evidence supports the ALJ's finding of an inconsistency, as the treatment records cited by the ALJ document that Petitioner is able to ambulate and stand without any assistive device.

**MEMORANDUM DECISION AND ORDER - 10**

### 1.    Inconsistency with the Treatment Records

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine ... credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider").

Here, the ALJ did not err in discounting Petitioner's symptom testimony concerning her migraine headaches, pain in her feet, hip popping out, or ability to ambulate as inconsistent with the treatment records. (AR 22.) The ALJ cited several medical records finding Petitioner's migraine headaches were well controlled with medication, her gait was normal and steady without any assistive devices, and the absence of any reports by Petitioner to her medical providers of her hip popping out. (AR 16-17, 21-24.) The ALJ's discussion of these impairments and the relevant medical records is a sufficiently clear and convincing reason to discredit Petitioner's symptom testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what

testimony is not credible and what evidence undermines the claimant's complaints");

*Dodrill*, 12 F.3d at 918 (an ALJ must identify "what evidence suggests the complaints are not credible").

### 2.     Improvement with Medical Treatment

The ALJ's second reason for discrediting Petitioner's symptom testimony is that Petitioner reported significant relief of her RA symptoms from her medication treatment. (AR 22.) In discussing Petitioner's RA, the ALJ acknowledged there are medical records supporting Petitioner's statements that she left her job due to RA symptoms such as dropping things. Even so, the ALJ concluded that, "by September 2018, she reported significant relief from Remicade, consistent with improved exam findings, and additional medications were prescribed to alleviate the drop-off effect" of the Remicade. (AR 22.)

However, the ALJ did not address a record from January 2019, prior to Petitioner's loss of insurance and period of discontinued treatment, reporting that Remicade was no longer providing "any relief of her symptoms" and "has become inadequate to control her symptoms." (AR 779.) The January 2019 treatment note states Petitioner "continues to have significant diffuse arthralgias, stiffness and swelling on a day-to-day basis making it difficult to perform certain activities of daily lifting." (AR 779.) Although the ALJ summarized the January 2019 record earlier in the written decision (AR 20), his discussion of Petitioner's symptom testimony omitted any mention of the record and its more recent report that Remicade treatments had become ineffective to control Petitioner's RA symptoms (AR 22).

**MEMORANDUM DECISION AND ORDER - 12**

The Court finds the ALJ erred in concluding Petitioner's subjective RA pain symptoms were not as severe as alleged, based solely upon earlier medical evidence of effective treatment, without evaluating the consistency or inconsistency of Petitioner's complaints with the January 2019 record showing the treatment had become ineffective. For instance, the ALJ did not discuss whether Petitioner's activities of daily living or any examination records were inconsistent with the alleged severity of her RA symptoms.[8] Therefore, the ALJ's reliance on records showing improvement with medical treatment is not a valid clear and convincing reason for discrediting Petitioner's symptom statements.

An ALJ's error may be harmless, however, "where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Bray*, 554 F.3d at 1227; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004)). "In this context, we have said that an error is harmless so long as there remains substantial evidence supporting the ALJ' decision and the error "does

---

[8] The Court notes the ALJ generally stated, without citation, that Petitioner's "exams showed no more than mild to moderate symptoms" with regard to her ability to ambulate. (AR 22.) Similar examination findings appear in the January 2019 treating record regarding Petitioner's hands and wrists. (AR 780) (reporting mild synovitis and synovial hypertrophy along with discomfort with palpitation noted of bilateral wrists, second and third MCPs and PIPs). Because this finding is not part of the ALJ's written decision, however, the Court cannot rely on it as a basis to affirm. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely.").

not negate the validity of the ALJ's ultimate conclusion." *Id.* The Court will therefore consider below whether substantial evidence supports the ALJ's RFC assessment and resulting disability determination.

## 2.     Lay Witness Testimony

On July 31, 2018, Petitioner's daughter, Carolyn, completed a third-party function report describing Petitioner's ability to walk, bend, stoop, lift, carry and sit, as well as Petitioner's observable manifestations of pain. (AR 238-246.) Carolyn reported that Petitioner lives with her son who helps her. Carolyn states Petitioner's hands are "crippled," it is difficult for her to do simple things because of her "widespread arthritis," her body hurts all over, and it is hard for her to sleep. (AR 239, 243.) Consistent with Petitioner's functional report, Carolyn indicates that Petitioner cares for her animals, prepares meals, does cleaning and laundry, and goes to stores to shop for her needs.

The ALJ accurately described Carolyn's statement and then stated: "The undersigned fully considered this evidence within the context of the other medical and non-medical evidence in this case." (AR 24.)

Petitioner contends the ALJ erred by dismissing the lay testimony without providing germane reasons. (Dkt. 20 at 12.) Respondent asserts the ALJ reasonably considered the lay testimony and any error was harmless. (Dkt. 21 at 7.)

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d

**MEMORANDUM DECISION AND ORDER - 14**

634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). The 2017 regulations adjusted

the requirements for an ALJ's consideration of nonmedical evidence such as lay witness

statements. Under the plain language of the regulations, the ALJ must consider lay

witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ

"consider[s] all of the available evidence," including that from "medical sources and

nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§

404.1529(c)(1), 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other

evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R.

§§ 404.1520c(d), 416.920c(d), specifies that the ALJ is not required to articulate how he

or she considered evidence from nonmedical sources "using the requirements in

subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she]

must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When

rejecting third party statements which are similar in nature to Petitioner's statements, the

ALJ may cite the same reasons used by the ALJ in rejecting Petitioner's statement. *See

Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving

rejection of a third-party family member's testimony, which was similar to the

claimant's, for the same reasons given for rejection of the claimant's complaints).

Respondent maintains the ALJ reasonably considered the third party statement by

noting that Carolyn's lack of observation created inconsistencies in her testimony which

cast significant doubt over the reliability of the statement. (Dkt. 21 at 8.) Further,

**MEMORANDUM DECISION AND ORDER - 15**

Respondent contends that, since Carolyn's statement is substantially similar to Petitioner's own testimony, the ALJ's reasons for rejecting the latter apply with equal force to the lay witness statements. (Dkt. 21 at 7.) The Court finds otherwise.

The ALJ failed to provide germane reasons for discrediting the lay witness statement. The reasons advanced by Respondent in its briefing were not expressly stated in the ALJ's written decision. (AR 24.) Rather, the ALJ stated only that he "fully considered" the evidence. (AR 24.) The Court cannot affirm the ALJ on a ground that he did not articulate. *Orn*, 495 F.3d at 630. For these reasons, the Court finds the ALJ erred in his consideration of the lay testimony.

Further, the Court cannot confidently conclude the error was harmless, because had the ALJ fully crediting the lay testimony, he could have reached a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006). Because Carolyn's statement is substantially similar in describing Petitioner's functional limitations, had the ALJ credited the lay testimony it would corroborate Petitioner's own symptom testimony. Consequently, the ALJ may have arrived at a different assessment of Petitioner's symptom testimony and disability determination. Accordingly, remand for further proceedings is appropriate.

**3.     The RFC Assessment and Disability Determination**

Petitioner argues the RFC assessment is not supported by substantial evidence. (Dkt. 20, 24.) Respondent contends substantial evidence does support the ALJ's findings. (Dkt. 21.)

**A.     Legal Standard**

Residual functional capacity (RFC) is the most a person can do, despite their

physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In determining a

claimant's RFC, an ALJ must consider all relevant evidence in the record, including

medical records, lay evidence, and "the effects of symptoms, including pain, that are

reasonably attributed to a medically determinable impairment." *See* SSR 96–8p; 20

C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ is required to consider all of the

limitations imposed by the claimant's impairments, even those that are not severe. SSR

96–8p. The RFC assessment is used to determine first, whether the claimant can do their

past relevant work and, second, whether the claimant can adjust to any other work that

exists in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5).

**B.     Discussion**

The ALJ found Petitioner retains the RFC to perform sedentary work as defined in

20 C.F.R. §§ 404.1567(a), 416.967(a), with certain postural and environmental

limitations. (AR 19.) The regulations define sedentary work as involving lifting no more

than 10 pounds at a time and occasionally lifting or carrying articles like docket files,

ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). Sedentary work is

defined as jobs involving sitting, with occasional walking and standing. *Id.* Occasionally

"means occurring from very little up to one-third of the time, and would generally total

no more than about 2 hours of an 8-hour workday." SSR 96-9p; *see also* SSR 83-10.

Relevant here, the ALJ limited Petitioner to occasionally handling or fingering.

**MEMORANDUM DECISION AND ORDER - 17**

(AR 19.) The ALJ found the postural limitations in the RFC, including handling and fingering, are "consistent with the severity of these conditions, as evidenced by the medical records and the claimant's testimony." (AR 24.) The ALJ further stated that the RFC is supported by the opinion of Dr. Ralph Heckard, a consultative examiner.[9]

In discussing the RFC assessment, the ALJ concluded:

> While the treatment records support the determination that she can sustain full-time work, so long as it is sedentary and otherwise within the above RFC parameters, the undersigned considered the claimant's testimony that her limitations are much greater (see also, above). Considering all of the evidence, including the lack of much treatment evidence after January 2019 due to loss of insurance, but also the reasonable expectation that her condition will improve with return to her medications, the undersigned finds a sedentary RFC with occasional handling and fingering, etc., is warranted. A more restrictive RFC is not warranted because prior to January 2019, the claimant's joint and back pain was reasonably controlled with medication, MBBs, and joint injections, as demonstrated by the documentation of normal gait without need for an assistive device and no significant difficulties using her hands from about September 2018 through January 2019. Further, the above RFC, considering the vocational evidence, accounts for the claimant's testimony that she would be unable to return to her past work, even with Remicade/medications.

(AR 25.) The Court finds error in the ALJ's conclusion that a sedentary RFC with occasional handling and fingering is warranted because there is a "reasonable expectation that [Petitioner's] condition will improve with return to her medications." (AR 25.)

This conclusion is based on the ALJ's finding that "prior to January 2019, the

---

[9] Following a physical examination, Heckard opined that Petitioner has some postural and functional limitations resulting from her impairments, including: her ability to sit, stand, walk, and repetitively handle or finger. (AR 536-537.) Heckard concluded that Petitioner can handle objects with both gross and fine bimanual motor dexterity. (AR 537.) Petitioner does not assign any error to the ALJ's evaluation of Dr. Heckard's opinion. (Dkt. 20, 24.)

claimant's joint and back pain was reasonably controlled with medication, MBBs, and joint injections, as demonstrated by the documentation of normal gait without need for an assistive device and significant difficulties using her hands from about September 2018 through January 2019." (AR 25.) As with the symptom testimony discussed above, however, the ALJ fails to reconcile his finding that Petitioner's symptoms were controlled with medication in September of 2018 with the January 2019 medical record reporting Remicade was no longer effective and provided no relief for Petitioner's RA symptoms. (AR 779.)

Rather, the medical records show that the medication treatment Petitioner was receiving for her RA in January 2019, immediately prior to losing her insurance, was ineffective at controlling her symptoms. Therefore, the ALJ's conclusion that it was reasonable to expect Petitioner's condition will improve with a return to medication is not supported by substantial evidence. Consequently, the RFC assessment is also not supported by substantial evidence.

The ALJ indicated that he incorporated functional limitations opined by Heckard into the RFC. (AR 24.)[10] However, the ALJ's reliance on Heckard's November 3, 2018 opinion to support the RFC assessment does not resolve the error found here, as it too precedes the January 2019 report showing Petitioner's RA treatment was no longer

---

[10] Petitioner argues the ALJ rejected all of the medical opinions in the record. (Dkt. 24 at 3.) The Court disagrees. The ALJ found Heckard's opinion persuasive and generally consistent with the objective medical evidence. Indeed, the ALJ decision clearly states the RFC is supported by Heckard's opinion and includes limitations as opined by Heckard. (AR 24.)

**MEMORANDUM DECISION AND ORDER - 19**

effective.

Prior to reaching the RFC assessment, the ALJ's written decision summarized a medical record from February 2020, after Petitioner had obtaining new insurance coverage. (AR 21.) The record reports Petitioner had restarted RA medication treatments Arava and Plaquenil in February 2020, and that "[i]t will take 3-4 months to feel optimal benefit of Arava and Plaquenil." (AR 771.) Further, it is unclear whether this record constitutes substantial evidence in support of the RFC assessment or the ALJ's conclusion that Petitioner's return to these medications would improve her condition to the level assigned in the RFC. In any event, the ALJ does not cite to or refer to this record in assessing the RFC or in concluding there is a reasonable expectation that her RA condition will improve with return to her medications. As such, the Court cannot affirm the ALJ's decision on this basis. *Orn*, 495 F.3d at 630.

## CONCLUSION

Although the Court concludes that the ALJ committed legal error, the Court declines to remand for an immediate award of benefits because the Court is not satisfied that "further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). As noted herein, there may be records supporting the ALJ's decision that were not addressed in the written decision. The Court therefore finds remand is appropriate for the ALJ to reconsider the evidence in evaluating Petitioner's symptom testimony, the lay testimony, making the RFC assessment, and making the step four and step five determinations.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

DATED: January 25, 2022

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**